Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/09/2017 09:14 AM CST

State of Nebraska, appellee, v.
Daniel Lee Jones, appellant.
___ N.W.2d ___

Filed August 18, 2017.    No. S-16-1001.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Constitutional Law: Sentences.** Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law.
4. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.
5. **Constitutional Law: Minors: Homicide: Sentences.** The Eighth Amendment forbids a state sentencing scheme that mandates life in prison without the possibility of parole for a juvenile offender convicted of homicide.
6. **Minors: Homicide: Sentences.** A sentencing court must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile convicted of a homicide.

Appeal from the District Court for Sarpy County: David K. Arterburn, Judge. Affirmed.

Julie E. Bear, of Reinsch, Slattery, Bear & Minahan, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Daniel Lee Jones pled no contest to first degree murder in 1999 and was sentenced to imprisonment for life. Jones was 16 years old at the time of the murder, and therefore, his life sentence was vacated in 2015 pursuant to *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and he was granted a resentencing. After a hearing, the district court for Sarpy County resentenced Jones to imprisonment for 80 years to life. Jones appeals his resentencing. We affirm.

## STATEMENT OF FACTS

Jones was charged with first degree murder and use of a weapon to commit a felony in connection with the stabbing death of Scott Catenacci. Jones' birth date is November 7, 1981. The killing occurred on or about September 29, 1998. Pursuant to a plea agreement, Jones pled no contest to first degree murder and the State dismissed the use of a weapon charge. The factual basis presented by the State at the plea hearing indicated that Jones, in concert with other defendants, had attacked Catenacci and stabbed him to death. The attack on Catenacci, having been discussed several days beforehand, was premeditated, deliberate, and malicious. Jones stabbed Cateneacci several times, and Catenacci died as a result of the wounds. Jones was convicted, and on June 28, 1999, the district court sentenced him to imprisonment for life.

Jones' first direct appeal was dismissed for failure to pay the statutory docket fee, but Jones obtained a new direct appeal as postconviction relief. Jones' conviction and sentence were affirmed by this court in the new direct appeal. *State v. Jones*, 274 Neb. 271, 739 N.W.2d 193 (2007).

On June 25, 2012, the U.S. Supreme Court held in *Miller, supra*, that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. Although the Court in *Miller* concluded that the Eighth Amendment prohibited a mandatory life sentence without parole, the Court allowed the possibility that a juvenile convicted of a homicide offense could be sentenced to life in prison, but only after "consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing." See *Montgomery v. Louisiana*, ___ U.S. ____, 136 S. Ct. 718, 725, 193 L. Ed. 2d 599 (2016). In response to *Miller*, the Nebraska Legislature enacted Neb. Rev. Stat. § 28-105.02 (Reissue 2016), which, inter alia, sets forth mitigating factors that a court must consider when sentencing a juvenile convicted of a Class IA felony. In *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014), we held that the rule announced in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), applied retroactively to a case on collateral review. See, also, *Montgomery, supra*.

On June 21, 2013, Jones, who was 16 years old at the time of the murder, filed a motion for postconviction relief based on *Miller*. After this court's holding in *Mantich* and after an evidentiary hearing, the district court on July 9, 2015, sustained Jones' motion and, as postconviction relief, vacated his sentence and set the matter for resentencing.

In August 2016, the court held a mitigation hearing as part of the resentencing. At the mitigation hearing, Jones presented evidence including the deposition testimony of a certified child and adult psychologist regarding adolescent brain development and the significant differences between juveniles and adults. Jones presented live testimony of witnesses including Jones' sister, who testified regarding Jones' childhood experiences and his home and family life while growing up. She generally testified that the family moved

frequently during Jones' childhood and mostly lived in areas of poor socioeconomic status that were prone to crime and gang violence, that Jones never knew or was involved with his father when growing up, that their mother had a succession of boyfriends who were abusive, and that Jones had very little supervision and ended up going "along with the [wrong] crowd." Jones also presented testimony by a unit manager in the prison where Jones was incarcerated that Jones was quiet, followed the rules, and was not a problem inmate. Jones also presented testimony by a clinical psychologist who had performed a comprehensive mental health evaluation of Jones for purposes of the mitigation hearing. He testified regarding various findings with respect to Jones' mental and psychological functioning and his neuropsychological development. He further testified, inter alia, that Jones had matured over time and had supports in place for employability and residence in the community. He opined in a report that Jones was at a low risk for future violence.

The district court resentenced Jones on October 3, 2016. At the sentencing hearing, the court stated that it had considered Jones'

> age, now and at the time of the offense, his mentality, education, experience, social and cultural background, past criminal record or record of law-abiding conduct, the motivation for the offense, as well as the nature and severity of the offense and the significant amount of violence involved in the commission of the crime.

The court stated that it had also considered, inter alia,

> all of the evidence adduced at the mitigation hearing, including, but not limited to, the expert testimony, the pertinent case law, including, but not limited to, the rationale underlying the case [*Miller, supra*], . . . the records of the Department of Corrections concerning [Jones'] actions and behavior while incarcerated,

and "the factors set forth in [§] 28-105.02(2)." The court also noted that the crime committed by Jones "was an extremely

heinous crime" involving a "brutal, brutal murder" and that Jones had "participated both in planning and the execution of the crime." The court concluded that "a sentence of some severity is required but not such severity that [Jones] would never have hope of being released from prison." The court resentenced Jones to imprisonment for 80 years to life with credit for time served and statutory parole eligibility at age 56.

Jones appeals the district court's resentencing.

## ASSIGNMENTS OF ERROR

Jones claims, restated and summarized, that his sentence of 80 years' to life imprisonment with parole eligibility at age 56 is excessive and, in particular, that the court (1) abused its discretion by imposing a de facto life sentence which violated constitutional protections against cruel and unusual punishment and denied him a meaningful opportunity for release based upon demonstrated maturity and rehabilitation, (2) violated his constitutional due process rights when it failed to make specific findings to demonstrate that it adequately considered his age-related characteristics, and (3) violated his constitutional rights against cruel and unusual punishment by imposing a sentence which was not proportional.

## STANDARDS OF REVIEW

[1,2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Jackson, ante* p. 22, ___ N.W.2d ___ (2017); *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

[3,4] Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law. *State v. Nollen*, 296 Neb. 94, 892 N.W.2d 81

(2017). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id*.

## ANALYSIS

[5,6] In *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the U.S. Supreme Court held the Eighth Amendment forbids a state sentencing scheme that mandates life in prison without the possibility of parole for a juvenile offender convicted of homicide. *Miller* did not "categorically bar" the imposition of a sentence of life imprisonment without parole, but, instead, "held that a [sentencing court] must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile" convicted of a homicide. *Mantich*, 287 Neb. at 339-40, 842 N.W.2d at 730. We have previously held, in *Mantich*, that *Miller* applied retroactively and that therefore, any juvenile sentenced to mandatory life imprisonment without parole could have his or her sentence vacated and the cause remanded for resentencing.

In response to *Miller*, the Nebraska Legislature amended the sentencing laws for juveniles convicted of first degree murder.

Section 28-105.02, which applies to this case, provides as follows:

> (1) Notwithstanding any other provision of law, the penalty for any person convicted of a Class IA felony for an offense committed when such person was under the age of eighteen years shall be a maximum sentence of not greater than life imprisonment and a minimum sentence of not less than forty years' imprisonment.

> (2) In determining the sentence of a convicted person under subsection (1) of this section, the court shall consider mitigating factors which led to the commission of the offense. The convicted person may submit mitigating factors to the court, including, but not limited to:

(a) The convicted person's age at the time of the offense;

(b) The impetuosity of the convicted person;

(c) The convicted person's family and community environment;

(d) The convicted person's ability to appreciate the risks and consequences of the conduct;

(e) The convicted person's intellectual capacity; and

(f) The outcome of a comprehensive mental health evaluation of the convicted person conducted by an adolescent mental health professional licensed in this state. The evaluation shall include, but not be limited to, interviews with the convicted person's family in order to learn about the convicted person's prenatal history, developmental history, medical history, substance abuse treatment history, if any, social history, and psychological history.

With these principles in mind, we analyze Jones' assignments of error, each of which challenges the appropriateness of the sentence imposed at the resentencing.

*The Sentencing Court Did Not Impose a*
*De Facto Life Sentence in Violation of*
*the Eighth Amendment and Neb.*
*Const. art. I, §§ 9 and 15.*

Jones asserts that his sentence of 80 years' to life imprisonment "is the functional equivalent of life without parole." Brief for appellant at 27. In this regard, at the sentencing hearing, Jones submitted and the district court considered life expectancy information for the purpose of illustrating that convicted persons incarcerated in their youth can expect a shorter lifespan. Jones contends that convicted persons incarcerated in their youth may never reach parole eligibility age or that if they reach parole eligibility at an advanced age, the sentence is tantamount to a life sentence. Jones similarly contends that a "geriatric parole" does not afford him an opportunity for meaningful release. *Id.*

We have recently considered and rejected these contentions. In *State v. Smith*, 295 Neb. 957, 892 N.W.2d 52 (2017), we declined to find that life expectancy is the sole controlling issue, but we acknowledged that it is a matter the sentencing court can consider. In *Smith*, we also concluded that U.S. Supreme Court precedent indicated that the "meaningful opportunity" requirement requires a "meaningful and realistic opportunity to obtain release" from prison but did not refer to the enjoyment of life after release. 295 Neb. at 979, 892 N.W.2d at 66.

We continue to believe our conclusions in *Smith* are sound, and we apply them here. In this regard, we note that when resentencing Jones, the district court explicitly considered Jones' anticipated release and intended to give Jones "hope of being released from prison." Given the record and our jurisprudence, we find no merit to Jones' contention that his parole eligibility at age 56 is unconstitutional.

*The District Court Did Not Err When It Did Not*
*Make Specific Findings of Fact Regarding*
*Age-Related Characteristics.*

Jones contends that his constitutional rights to due process were violated because the district court did not make specific findings regarding age-related characteristics. We recently considered and rejected a comparable argument in *State v. Garza*, 295 Neb. 434, 888 N.W.2d 526 (2016). In *Garza*, we stated, "[The appellant] argues that when the sentencing court imposed the 90-to-90-year sentence, it failed to make a specific finding that [he] was that '"rare juvenile offender whose crime reflects irreparable corruption"' as opposed to '"transient immaturity."'" 295 Neb. at 447, 888 N.W.2d at 534. Like the defendant in *Garza*, because Jones was not sentenced to life imprisonment without parole, we find no merit to Jones' argument that the sentencing court was required to make specific findings including a finding regarding "irreparable corruption." See, also, *State v. Jackson, ante*

p. 22, ___ N.W.2d ___ (2017); *State v. Nollen*, 296 Neb. 94, 892 N.W.2d 81 (2017); *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014).

Jones suggests that other courts have chosen to require findings of fact. Compare *Sen v. State*, 301 P.3d 106 (Wyo. 2013) (stating in case imposing life sentence without parole that findings of fact are generally indicated). However, as Jones acknowledges, *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), did not impose a formal fact-finding requirement where the sentence includes the possibility of parole. Accordingly, we continue to adhere to our previously announced jurisprudence in this area.

We have reviewed the record and the resentencing court's order. By the announcement of its consideration of the factors in § 28-105.02(2), not repeated here, as well as the customary factors in imposing sentences, we believe the sentencing court met the due process required by the Constitution, *Miller*, and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016).

*The Sentence Is Not Unconstitutionally Disproportionate.*

Jones argues that in his case, the punishment does not fit the offender, based on "'the basic "precept of justice that punishment for crime should be graduated and proportioned"'" to both the offender and the offense." See *Miller*, 567 U.S. at 469.

Jones urges us to give considerable weight to his youth because, although his age was considered in sentencing, he claims that his crime reflects """"unfortunate yet transient immaturity"'"" and that thus, his sentence still violates the Eighth Amendment. See *Montgomery*, 136 S. Ct. at 734. In *Montgomery*, the Court recognized that because of a juvenile homicide offender's "'diminished culpability and heightened capacity for change,'" it should be uncommon to deny a juvenile offender parole except in cases involving "the rare

juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible." 136 S. Ct. at 733. Jones compares his sentence to those of other juvenile homicide offenders and contends that his prior immaturity at age 16, coupled with improved behavior since his coming of age, establishes his capacity for remorse and reform.

In this regard, at the sentencing hearing, Jones submitted and the court considered a matrix of sentences imposed on other juveniles resentenced in Nebraska under *Miller*. Jones suggests his sentence was comparatively more severe. We do not agree.

We have previously considered and rejected a broad proportionality claim in *Mantich, supra*. In *Mantich*, we stated:

> The Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." The U.S. Supreme Court has characterized this as a "'narrow proportionality principle'" which "'does not require strict proportionality between crime and sentence'" but, rather, "'forbids only extreme sentences that are "grossly disproportionate" to the crime.'"

287 Neb. at 353-54, 842 N.W.2d at 738.

In this case, we recognize Jones' youthful status in that he was 6 weeks shy of his 17th birthday when he participated in the murder. However, evidence showed Jones planned the murder in advance, executed the crime, and, after seeing it through to completion, undertook acts of concealment, including disposing of the knife used during the murder and lying to the police. Jones' actions were not merely youthful impulse; they were calculated, malicious, and violent. The sentencing court stated "a sentence of some severity" was required. We agree with the sentencing court that the sentence is appropriate for the offense and offender. We therefore conclude that the sentence was not disproportionate under the Eighth Amendment.

## CONCLUSION

The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of a convicted person's demeanor and attitude and all of the facts and circumstances surrounding his life. The sentencing court adhered to these principles. Upon our review of the record, we conclude that Jones' sentence of 80 years' to life imprisonment with parole eligibility at age 56 is in accordance with constitutional principles; *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); and § 28-105.02, and we therefore affirm Jones' sentence.

Affirmed.