IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DETWILER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

PAUL DETWILER, APPELLANT.

Filed December 5, 2017.    No. A-17-101.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge. Affirmed.

Ryan D. Caldwell, of Caldwell Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Paul Detwiler was convicted of possession of a deadly weapon by a prohibited person, a Class ID felony, after a jury trial in the district court for Scotts Bluff County. On appeal, Detwiler challenges the State's amendment of the information after the close of its case-in-chief, the sufficiency of the evidence, and the denial of his motion for new trial. We affirm.

## BACKGROUND

Detwiler's conviction in this case was the result of a firearm and several rounds of ammunition being found during the execution of a search warrant at a house Detwiler leased with his wife, Holly P., south of Melbeta, Nebraska, near Gering, Nebraska (Gering property). The search warrant was executed by a law enforcement team consisting of members from the Gering

Police Department, the Scotts Bluff County Sheriff's Office, and the Nebraska Game and Parks Commission. The original information filed in the district court alleged Detwiler was a felon or fugitive in possession of a firearm in violation of Neb. Rev. Stat. § 28-1206 (Reissue 2016), on or about November 12 through December 3, 2015.

A jury trial was held in December 2016. The parties stipulated Detwiler was a felon who was legally prohibited from owning a firearm.

James Jackson, a detective with the Gering Police Department, testified he applied for a warrant to search the Gering property for firearms, ammunition, and evidence of hunting violations based on information he received from the Scotts Bluff County Sherriff's Office (following interviews of Detwiler and Holly in an unrelated investigation) and from Nebraska Game and Parks Officer Scott Brandt. The search of the property on December 3, 2015, revealed one firearm, a 12-gauge Remington 870 shotgun, found between the mattress and box-spring of the bed in the master bedroom of the house. The weapon was not tested for fingerprints or DNA. There were also several rounds of 12-gauge ammunition and two rounds of .410-caliber shotgun ammunition discovered in the house near the backdoor in the kitchen, several rounds of 12-gauge ammunition and empty boxes for shotgun shells in an outbuilding on the property, and a trigger-lock with a key found in the master bedroom. A partially completed application for membership in the Minatare Melbeta Volunteer Fire and Rescue department dated October 10, 2015, with Detwiler's name on it and some men's hunting clothing were also found in the house.

Four Nebraska resident hunting licenses in Detwiler's name were also admitted into evidence at trial. Two of the licenses allowed the use of firearms only, and two allowed either firearms or archery. All of the licenses were for hunting seasons occurring during 2015, and each had a corresponding receipt. Three of the receipts showed Holly as the purchaser, and one receipt showed Detwiler as the purchaser. Brandt testified the licenses were bought online and there was no way to know who bought them regardless of the name on either the receipts or licenses.

Holly claimed at trial the firearm was hers for protection for her and her daughters living out in the country, and that Detwiler did not know she owned it. She also claimed she had purchased all four of the hunting licenses, including the one with the receipt in Detwiler's name, as a gift for Detwiler not knowing he was completely prohibited from using some of them. She also stated the hunting clothing was from Detwiler's father and would not fit Detwiler. However, in the November 12, 2015, video interview of Holly from Scotts Bluff County Sheriff Deputy David Ojeda's body camera, she unequivocally denied owning any guns or having any in the house, and stated she wanted to buy one so she could use it to hunt. She also stated Detwiler did not have any hunting licenses, and did not hunt anymore because they were so busy taking care of livestock.

A store manager for a pawnshop in Scotts Bluff County testified Holly pawned a Remington 870 shotgun on July 27, 2015, which she got back from the shop on September 3. Holly pawned it again on an unspecified date after September 3, but then retrieved it a second time on October 30, 2015.

Stan Liss, the manager of the Gering property, testified Detwiler and Holly had leased it for one year starting October 1, 2015, and the lease had both their names on it. Liss described the property as an old bungalow house with an acre of land associated with it and a few small farm

buildings on it. He stated both Detwiler and Holly would deliver the monthly rent to his office in Johnstown, Colorado, but he rarely saw Detwiler when he drove through to inspect the properties he manages.

In a video interview of Detwiler from an unrelated investigation recorded via Ojeda's body camera on November 12, 2015, Detwiler acknowledged living on the Gering property with Holly and her three daughters. Ojeda asked Detwiler "when did you move up here?" Detwiler did not deny living on the Gering property, nor did he correct Ojeda. Detwiler stated "they" first lived in Morrill, Nebraska, during which time he was driving back and forth to Colorado to farm, and then "they finally settled for a few months" until September 2015, when they moved into the Gering property. He told Ojeda his phone number was the same as Holly's, and referred to a room in the house as "our room." He also explained the details of the family's routine for morning and evening farm chores, school and homework, and family dinner, as well as how he and Holly disciplined Holly's daughters.

Ojeda testified that after he interviewed both Detwiler and Holly on November 12, 2015, Detwiler showed him around the Gering property at Ojeda's request. Ojeda stated that during the interview, Detwiler seemed to know the details of the family routine for daily life at the property.

Holly claimed at trial that Detwiler had always lived and farmed in Colorado and not at the Gering property. He would visit the house if she needed something, but he never stayed the night because he was working so many hours farming and had to take care of livestock. He knew the family routine because they talked about it on the phone and because it was the same as the one they had when they all lived together in Colorado prior to leasing the Gering property.

However, in the video interview of Holly she stated that when they lived in Morrill prior to moving to the Gering property, Detwiler would watch her daughters when she was at work. There was no indication by Holly at any point in the video that Detwiler did not reside in Nebraska with her and her daughters. Nor did she contradict the implication in Ojeda's questions that Detwiler resided with her.

Holly's daughter, Alliah P. (13 years old at the time of trial), testified Detwiler lived with her family all of the time, and not just on the weekends. She claimed there were multiple "long guns" (as opposed to pistols) in the house and in the garage belonging to Detwiler, and some belonging to Holly. She stated Detwiler always kept firearms in his truck as well, and that he attempted to shoot animals in the fields around the Gering property if he spotted them, though she never saw him actually hit one. Alliah also testified on cross-examination that she had previously called Detwiler "mean," and she believed he was the reason she could not live with her biological father.

Another of Holly's daughters, Savanna P. (10 years old at the time of trial), testified she remembered living in a farmhouse outside of Gering with Alliah, Detwiler, and Holly, and that Detwiler lived with them the entire time they were there. Savanna only remembered seeing guns in the barn, and remembered them being "long guns" and not "short ones," though she could not remember how many there were. Savanna also remembered Alliah telling her she thought Detwiler was mean to her.

Scott Newbold, Detwiler's probation officer in Colorado, testified that Detwiler's supervised probation subjected him to random drug screenings which required a quick response,

and he was required to maintain employment and a residence in Colorado during the entire year of 2015. Detwiler had provided proof of his employment at two places in Colorado, Roberts Excavation and Weitzel Farms and Dairy. Detwiler never missed a meeting with Newbold, and there were three pieces of "official correspondence" sent to Detwiler's home address listed in Colorado that appeared to have been received as the mail was not returned. One mailing required Detwiler to report to the office and he did appear. The other two mailings were "from collections," and although they did not receive the mail returned, Detwiler "didn't respond to collections in regards to the correspondence."

Newbold recalled authorizing "specifically two" travel permits and was "certain that there [were] a couple more" to allow Detwiler to travel to Torrington, Wyoming, or Gering for approximately 30 days at a time. He did not believe Detwiler had ever left the state without such a permit. Newbold did two home visits, one in January 2016, and one in September 2016. The home visits were only to verify Detwiler's Colorado home address on record, and Newbold did not establish contact with Detwiler at his house either time. Newbold had some discussion with Detwiler about Detwiler's employer possibly moving some operations to Nebraska and the Wyoming area; Detwiler inquired about transferring his probation to Nebraska, but it was just a preliminary discussion and no official action was taken.

Anthony Hendricks, a friend of Detwiler's, lived adjacent to the Gering property from October 2015 to June 2016. Hendricks became friends with Detwiler after they met at a cattle auction, and he moved to Gering after Detwiler told him Weitzel Farms and Dairy might have employment opportunities in the area in the future. The location of Hendricks' property required him to drive through the drive way of the property Detwiler and Holly leased in order to get to his property. He testified he never saw Detwiler or his vehicle parked at the Gering property during the time he was their neighbor. Hendricks also owned a house in Milliken, Colorado, which he claimed he paid Detwiler to remodel in the evenings from October 2015 through December 2015.

Audrey Weitzel testified Detwiler worked for her and her husband at Weitzel Farms and Dairy in Johnstown, Colorado, during the period of October 1 to December 3, 2015. The work "wasn't steady all through there, it was just periods of here and there when we needed extra help." Detwiler's hours would vary depending on the weather and she or her husband would call him and let him know if they needed help. It would take him approximately 20 to 30 minutes to arrive after they called and he never said he could not come. Sometimes he would show up without even needing to be called because he knew there would be work to do because of bad weather.

At the close of its case-in-chief, the State made a motion to amend the dates in the information to conform to the evidence of the dates on the lease. The amendment changed the original dates of November 12 to December 3, 2015, to the amended dates of October 1 to December 3. Detwiler's counsel objected to the motion, but the district court allowed the amendment.

After the close of all evidence, the jury convicted Detwiler of possession of a deadly weapon by a prohibited person, a Class ID felony. The district court sentenced Detwiler to imprisonment for a period of not less than 3 years, nor more than 3 years, with credit for 1 day previously spent in custody awaiting trial and sentencing. Detwiler now appeals.

ASSIGNMENTS OF ERROR

Detwiler assigns the district court erred by (1) allowing the State to amend the information to extend the date range of the charge after the conclusion of the State's case-in-chief, (2) finding the evidence was sufficient to establish he was guilty beyond a reasonable doubt, and (3) denying his motion for new trial.

STANDARD OF REVIEW

A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017).

ANALYSIS

*Amended Information.*

Detwiler claims the court erred by allowing the State to amend the dates in the information to conform to the evidence after the State had put on its case-in-chief. Detwiler's counsel objected to the amendment at trial claiming it denied Detwiler due process and was unfairly prejudicial to his defense. The court asked, "[H]ow does [the amendment] damage the defense that you will be presenting?" Detwiler's counsel responded the date of November 12, 2015, "served as a reference point at least in preparation for the case," and the State's witnesses had been released from their subpoenas and were no longer available for cross-examination. He specifically mentioned Jackson and Ojeda as witnesses who had been asked if they had seen Detwiler in the area after November 12, 2015 (the original start date in the information), but had not been asked if they had seen him before that date.

The State argued Detwiler was not unfairly prejudiced because the date of the crime is not a material element of § 28-1206. It also pointed out that during discovery prior to the trial, Detwiler received all of the evidence the State was planning to present, including receipts of the hunting licenses, three Gering Police Department reports including one which had the dates the weapon in question was pawned, a Scotts Bluff County Sherriff's Office report, and the video interviews of both Detwiler and Holly. Through the receipt of that evidence, Detwiler had notice of the dates to which the State was seeking to amend the information, and was therefore not unfairly prejudiced.

The court allowed the amendment, though it noted the amendment would cause some change in the final jury instructions. It saw no unfair prejudice to Detwiler based upon the evidence up to that point, and the court's understanding of the materials provided to Detwiler prior to the trial.

- 5 -

Detwiler asserts arguments on appeal similar to his objections at trial. He argues he was not given notice and an adequate opportunity to defend himself because he was unable to cross-examine witnesses again after the information was amended, and had to "revise his trial strategy and defense in a matter of moments." Brief for appellant at 17. He does not specify in what manner he was unfairly prejudiced by not being able to cross-examine the State's witnesses again, nor how his trial strategy was altered, other than the conclusory statement that "[he] was not provided notice and an adequate opportunity to defend himself." *Id.* at 17-18.

Detwiler also directs us to *State v. Cole*, 192 Neb. 466, 222 N.W.2d 560 (1974), and *State v. Johnson*, 290 Neb. 369, 859 N.W.2d 877 (2015), as examples demonstrating timeliness for an amendment to an information that are not prejudicial to a defendant. The information in *Cole* was amended on the day of trial to add another charge, but the court found the defendant was not unfairly prejudiced because the additional charge was not dealt with until a week later. The amendment to the information in *Johnson* added an additional charge more than 3 months prior to the trial, which the court similarly found was not prejudicial to the defense. Detwiler cites these cases as examples where an amendment to the information was "not prejudicial because it was made at a point in time [in] the proceedings to allow the defendant to have proper notice and a chance to prepare an adequate defense." Brief for appellant at 17. He contrasts those cases with his own where he was notified of the amendment to the information at the close of the State's case-in-chief against him, and argues the disparity between the cited examples and his case was a violation of his right to due process.

However, *State v. Cole, supra,* and *State v. Johnson, supra*, do not involve an amendment to conform the information to the evidence (as in this case), but instead both added an additional charge. *Cole* and *Johnson* are simply examples of an amendment to the information occurring before the close of the State's case-in-chief where the courts found the respective defendants were not unfairly prejudiced. Neither stands for the proposition that a defendant must be given at least the same amount of time (or more) as the defendants in either of those cases in order to not be unfairly prejudiced by an amended information.

The State points out the dates on the lease and the dates of retrieving the weapon from the pawnshop were the basis for the amended dates in the information, and were entered into evidence without objection at trial. The State also argues the original information was sufficient to apprise Detwiler of the criminal charge against him. Amending the dates "changed none of the essential elements of the crime, nor the nature of the accusations." Brief for appellee at 12.

We find the amendment to the information to conform to the dates established by the State's evidence did not unfairly prejudice Detwiler's defense, nor did it violate his right to due process. A trial court, in its discretion, may permit a criminal information to be amended at any time before the verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011). A criminal information may be amended specifically to conform to the evidence adduced at trial. See *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984). See, also, *State v. Wiemer*, 3 Neb. App. 821, 533 N.W.2d 122 (1995). Under Nebraska law, the exact time of the commission of an offense is not regarded as a substantive element in the charge or proof thereof,

unless the statute involved makes it so or is clearly intended to have that effect. *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015).

The amendment to the information in this case is similar to the one in *Piskorski, supra*. The information in *Piskorski* originally alleged the offense occurred "on or after December 11, 1982 and before December 25, 1982[,]" which was amended to conform to the evidence at the end of the State's case-in-chief to allege the offense "occurred on or after September 1, 1982, and before December 25, 1982[.]" *Piskorski*, 218 Neb. at 547, 357 N.W.2d at 210. The defendant appealed the district court's decision to allow the amendment, claiming prejudice. The Nebraska Supreme Court affirmed the district court's ruling stating:

> This amendment did not make any new or additional charges nor raise matters with which Piskorski was not previously aware. It simply attempted to cause the information to conform to the proof. No one could determine the date of the assault any closer than sometime between September 1, 1982, and December 25, 1982. The fact that the date upon which the crime is alleged to have been committed was expanded to conform to the proof is of no moment.

*Id.* Here, the State similarly amended the information to conform the dates to the evidence admitted in its case-in-chief. The State correctly points out § 28-1206 does not require time as an element to be proven, which means the amendment to the dates in this case did not "make any new or additional charges" similar to the amendment in *State v. Piskorski, supra*. See, also, *State v. Samayoa, supra*.

The amendment also did not "raise matters with which [Detwiler] was not previously aware" thereby causing unfair prejudice to his defense. As the State points out, "before and after the amendment, Detwiler's charges were based upon the discovery of firearms in a home . . . that he, a felon, leased with his wife." Brief for appellee at 8. Detwiler provides no specific indication as to how his trial strategy was forced to change based on the amendment to the dates in the information. He also does not provide any questions his defense might have benefited from had his counsel been allowed to cross-examine the State's witnesses again after the amendment. Contrary to Detwiler's counsel's arguments at trial, Jackson was asked if he had ever seen Detwiler in Scotts Bluff County prior to November 12, 2015, and he responded "I had not." Ojeda likewise was asked if he had ever seen or met Detwiler prior to November 12, and he also responded in the negative.

Detwiler fails to articulate any argument more specific than a conclusory statement that he was unfairly prejudiced by the amendment, and there is nothing in the record that demonstrates allowing the amendment was clearly untenable, unfairly deprived him of a substantial right, or denied a just result. Therefore, we affirm the district court's determination that the amendment of the information to conform to the evidence was not a violation of Detwiler's right to due process.

*Sufficiency of Evidence.*

Detwiler argues the State failed to put on sufficient evidence to convict him of possession of a deadly weapon by a prohibited person. At the time of Detwiler's offense, § 28-1206 stated in relevant part:

(1)(a) Any person who possesses a firearm, a knife, or brass or iron knuckles and who has previously been convicted of a felony, . . . commits the offense of possession of a deadly weapon by a prohibited person.

(2) The felony conviction may have been had in any court in the United States, the several states, territories, or possessions, or the District of Columbia.

(3)(a) Possession of a deadly weapon which is not a firearm by a prohibited person is a Class III felony.

(b) Possession of a deadly weapon which is a firearm by a prohibited person is a Class ID felony for a first offense and a Class IB felony for a second or subsequent offense.

This court has extended the doctrine of constructive possession to the crime of possession of a firearm by a felon or a fugitive from justice under § 28-1206. See *State v. Long*, 8 Neb. App. 353, 594 N.W.2d 310 (1999). Constructive possession means the possessor did not have actual possession but was aware of the presence of the contraband and had dominion or control over it. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

Detwiler concedes that he is a felon, but argues at no point in time did he have actual or constructive possession of a firearm. He points to several pieces of evidence that support the contention that Detwiler worked and resided in Colorado. He also argues the only evidence connecting him to the Gering property is his name on the lease, and an application for the local fire department.

The State points to Alliah's testimony that Detwiler had actual possession of firearms in the fall of 2015 on the occasions where he attempted to shoot animals spotted in the fields around the Gering property. The State alternatively argues that the evidence, specifically the testimony of Alliah and Savanna, and the video of Holly, shows Detwiler had constructive if not actual possession of the firearm between the dates in the information.

We agree with the State that the testimony of Alliah and Savanna, and the video of Holly, are evidence that Detwiler lived with them at the Gering property. Detwiler's video interview adds a considerable number of statements also indicating he lived there. Additionally, Liss testified Detwiler's and Holly's names were on the lease for the property, and the pawnshop manager testified Holly retrieved the firearm from the pawnshop for at least part of October 2015 and did not pawn it again in November or December, aligning with the dates in the information. These sources of evidence were all offered and received without objection.

Detwiler points to the testimony of several witnesses indicating he lived in Colorado that stands in opposition to the evidence he lived on the Gering property. But it is not an appellate court's role to reweigh the evidence; such consideration of the evidence was for the jury. Instead we have to construe the evidence in the light most favorable to the prosecution. In doing so, we find the testimony of Alliah, Savanna, Liss, and the pawnshop manager, as well as the video interviews of Detwiler and Holly, demonstrate Detwiler had dominion over the Gering property and was aware of the presence of the weapon and ammunition therein. Based on this evidence, the jury could have found Detwiler was in constructive possession of the firearm; and Detwiler stipulated to the fact that he was a prohibited person under § 28-1206. Therefore, a rational trier

of fact could have found the essential elements of the crime of possession of a deadly weapon by a prohibited person beyond a reasonable doubt.

*Motion for New Trial.*

Detwiler assigned as error the district court's denial of his motion for new trial. He argues a new trial should have been granted "due to the District Court's error allowing the State to amend the Information at the conclusion of its case-in-chief" and because there was "insufficient evidence to convict[.]" Brief for appellant at 21. In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hoerle*, 297 Neb. 840, 901 N.W.2d 327 (2017). Because we found no error by the district court in allowing the State to amend the information, and because there was sufficient evidence to convict Detwiler, the court did not abuse its discretion by overruling Detwiler's motion for a new trial.

CONCLUSION

For the reasons set forth above, we affirm Detwiler's conviction and sentence.

AFFIRMED.