IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SPENCER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN W. SPENCER, APPELLANT.

Filed July 23, 2024.    No. A-23-749.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Affirmed.

Gary G. Peterson, of Peterson Legal Services, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Justin W. Spencer pled no contest to one count of third degree domestic assault. The Custer County District Court sentenced him to 5 years' probation, but later revoked his probation and sentenced him to 3 years' imprisonment followed by 18 months' post-release supervision. Spencer appeals, claiming that his sentence was excessive and that his trial counsel was ineffective. We affirm.

## II. BACKGROUND

On November 16, 2021, the State filed an information charging Spencer with third degree domestic assault pursuant to Neb. Rev. Stat. § 28-323 (Cum. Supp. 2022), a Class IIIA felony. The State further alleged that Spencer was a habitual criminal under Neb. Rev. Stat. § 29-2221 (Supp. 2023). On November 18, Spencer entered a plea of not guilty. At a hearing held January 20, 2022, the State informed the district court that a plea agreement had been reached. In exchange for a plea

- 1 -

of guilty or no contest to the third degree domestic assault charge, the State would dismiss the habitual criminal charge. The State also agreed to recommend that Spencer receive a sentence of probation and to dismiss certain pending cases in county court. Spencer confirmed that this was his understanding of the plea agreement. He withdrew his plea of not guilty and, after being informed of the possible penalties, entered a plea of no contest for that charge.

The State provided the following factual basis:

> On September 15th, 2021, at approximately 10:22 a.m., the Custer County Sheriff's Office was informed by . . . Spencer['s] [wife] that she had been physically assaulted by her husband, . . . earlier that morning around 9:40 in Sargent, Custer County, Nebraska. [A] [d]eputy . . . took [Spencer's wife's] statement and documented her injuries, which included a substantial bruise to her chin, small scratches to her right arm, and scrape on her right knee. [Spencer's wife] had advised that her mouth was sore as well. [Spencer's wife] stated that earlier that morning she had taken the dogs up to the room in which [Spencer] was sleeping. That upset him. As she was taking some of the dogs outside . . . Spencer grabbed [her], told her she wasn't going to leave the house. They began to wrestle around. She was able to free herself and . . . Spencer punched her in the chin resulting in a bruise. . . . Spencer has been previously convicted of third-degree domestic violence in Custer County in 2008 . . . and . . . in 2018 . . . . This all occurred in Custer County, Nebraska.

The district court then informed Spencer that this was an "enhanceable offense" and that he had a right to have a hearing to present mitigating evidence. The court confirmed that, knowing this information, Spencer did not want to change his plea of no contest. The court then received into evidence two certified records of Spencer's prior convictions of domestic assault. Pursuant to the plea agreement, the State filed an amended information on January 24, 2022, dismissing the habitual criminal charge but maintaining the third degree domestic assault charge.

Following a hearing, the district court entered an order on August 4, 2022, sentencing Spencer to 5 years' probation, the terms of which included that he:

> 3. Report as directed by the Court or probation officer.
> . . . .
> 7. Obtain suitable employment or regularly attend school/vocation training. . . .
> . . . .
> 13. Submit to random chemical testing of [his] blood, breath, or urine to determine the presence of alcohol and/or controlled substances as directed by the Court, probation officer, or a law enforcement officer.
> . . . .
> 19. Attend, successfully complete, follow all rules and regulations, and be financially responsible for any costs associated with attending Victim Empathy, Anger Management, DBT, and MRT.

On December 29, 2022, the State filed a motion alleging that Spencer violated multiple terms of his probation and asking the district court to revoke Spencer's probation. On February 9, 2023, the State filed a motion requesting that the court issue an arrest warrant for Spencer. Attached was an affidavit authored by Spencer's probation officer, which alleged that Spencer was "in

violation of his[] probation [o]rder dated August 4, 2022[,] by absconding supervision" and that he was "officially considered an absconder since December 1, 2022." On February 9, 2023, the court issued an arrest warrant for Spencer.

According to a "Motion to Revoke Admit or Deny Journal Entry and Order Modifying Bond" entered on July 6, 2023, a hearing "via Zoom technology" was held that day during which the district court was informed that a plea agreement had been reached. (The bill of exceptions for the July 6 hearing was not requested by appellant and is therefore not contained in the record before this court). The July 6 order indicates that in exchange for Spencer's admission to his violations of probation, the State would recommend a personal recognizance bond with the condition that Spencer check in daily with probation by telephone. The order states that Spencer "advises the Court that he understands and approves the agreement." Spencer admitted to "violating Condition #3, Condition #7, Condition #13, and Condition #19 of his Order of Probation." The order further states, "The Court questions [Spencer] and finds his admission to be knowing, voluntary, and intelligently made." The court further found "by clear and convincing evidence" that Spencer violated the probation conditions indicated. The court ordered that an updated presentence investigation be completed. Spencer's bond was later revoked due to his failure to contact probation on a daily basis; an arrest warrant was issued on July 19. Following a sentencing hearing on August 24, the court entered an order that same day revoking Spencer's probation and sentencing him to 3 years' imprisonment followed by 18 months' post-release supervision, with 202 days' credit for time already served.

Spencer appeals.

### III. ASSIGNMENTS OF ERROR

Spencer assigns that (1) the district court abused its discretion when it "fail[ed] to consider the statutory and judicially imposed considerations before entering its excessive sentence" and (2) "trial counsel failed to pursue credible avenues of defense, both in preparation for trial and at sentencing, and prejudiced the Defendant's interests preventing him from going to trial."

### IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

### V. ANALYSIS

#### 1. Excessive Sentence

Spencer claims that the district court abused its discretion when it "fail[ed] to consider the statutory and judicially imposed considerations before entering its excessive sentence." Brief for appellant at 11.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id*.

(a) Criminal History and Sentencing

Spencer was convicted of one count of third degree domestic assault, a Class IIIA felony. A Class IIIA felony is punishable by up to 3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). A Class IIIA felony carries no minimum punishment but requires 9 months' post-release supervision if a term of imprisonment is imposed. See *id.* Spencer's sentence upon revocation of probation was for 3 years' imprisonment followed by 18 months' post-release supervision. His sentence was within the statutory limit.

Spencer was 47 years old at the time of sentencing. According to the presentence investigation report (PSR), he was separated from his wife and had no dependents. He had received an education through 7th grade and was unemployed at the time of his incarceration.

Spencer's criminal history dating back to 1992 includes a few assault-related convictions, a couple burglary convictions, a few controlled substance or marijuana related convictions, numerous traffic related convictions, and more. His assault-related convictions included the following: "Assault by Confined Person-No Weapon" in 1999 (6-7 months' jail); "Assault" in 2005 ("Community Supervision expired"); "Domestic Assault-3rd Degree" in 2008 (60 days' jail, 24 months' probation, and "restitution + C.C."; unsatisfactory release from probation); and "Domestic Assault-3rd Degree" in 2018 (31 days' jail and "C.C."). A "Level of Service Case Management Inventory" assessed Spencer as a very high risk to reoffend. A "Domestic Violence Offender Matrix," scored Spencer in a "high-risk range" for specialized community supervision.

Spencer's wife did not submit a victim impact statement to be included in the PSR but informed the probation officer that Spencer's actions had "greatly affected her life" in a "physical, emotional, and financial" manner. She reported having "night terrors where she finds herself screaming herself awake" and "will wake up sweating and crying." She stated that "[t]he right side of her face is not working properly as a result of this incident" and that she had been diagnosed with PTSD and suffered from chronic anxiety. She was fearful Spencer would violate the protection order upon his release since he had already twice violated it. She further reported that she did "not feel safe being alone or around town with fear of running into [Spencer]."

The probation officer indicated that Spencer was uncooperative during the "updated presentence investigation interview." The officer further noted that Spencer had "struggled while on probation" and had absconded from the probation office. Spencer also failed to maintain daily contact with his probation officer, provide verification of a chemical dependency evaluation, complete his "victim empathy, anger management, DBT, or MRT classes," complete the

"Domestic Violence Program," and provide verification of community service hours completed when not employed. The probation officer concluded that Spencer was not "an appropriate candidate for probation due to safety concerns for the victim and the lack of accountability [he] had shown [for] this offense." The probation officer recommended that a term of incarceration be imposed.

At the August 24, 2023, resentencing hearing, the State highlighted that Spencer had failed to complete his probation. The State noted that Spencer was released on a personal recognizance bond on certain conditions, but he contacted the probation office and notified them that "he had no intention of following through with those conditions." The State then recommended that the district court impose a maximum term of incarceration.

Spencer's trial counsel acknowledged that Spencer had not succeeded on probation but stated that Spencer had partially complied with the terms of his probation. Trial counsel also highlighted that Spencer had already been incarcerated for 202 days. Trial counsel requested that the district court order a sentence of time served so Spencer could return to work and begin fixing his house. When given the opportunity to provide an allocution to the court, Spencer stated "I just wish it would have went better."

The district court stated that it had reviewed the PSR and considered the relevant sentencing factors in determining an appropriate sentence to impose. The court noted that Spencer had "a history of violence against women," that there was "a lot of violence involved in the commission of this crime," and that Spencer's actions had lasting effects on the victim. The court further noted that Spencer had not complied with the terms of his probation and determined that "[t]he risk [was] substantial that during a period of probation [Spencer would] engage in additional criminal conduct." The court thus determined that a term of incarceration was necessary for the protection of the public and that a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. The court then sentenced Spencer as previously set forth.

(b) Argument Related to Plea

Spencer initially argues that the "revocation of traditional probation was upon the erroneous finding of a competent entry of plea" and therefore he is "entitled to a vacation and remand on the revocation of probation." *Id.* at 17. Spencer's argument related to the entry of his plea on revocation of probation has nothing to do with the factors considered by a court before imposing sentence, and no error was assigned specific to the entry of Spencer's plea on revocation. We therefore decline to address arguments made by Spencer related to his plea. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019). An appellate court does not consider errors which are argued but not assigned. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018).

Also, no bill of exceptions for the July 6, 2023, hearing was produced for this court's review, and it was during that hearing that the district court was informed that a plea agreement had been reached and Spencer admitted to violating certain probation conditions. The court's order entered that same day indicated that the court questioned Spencer and found his admission to be "knowing, voluntary, and intelligently made." Absent a bill of exceptions, it is presumed on appeal

that the evidence supports the trial court's orders. See *Rosberg v. Rosberg*, 25 Neb. App. 856, 916 N.W.2d 62 (2018).

Finally, to the extent Spencer is referring to his original plea, he may not attack an aspect of his underlying conviction when appealing an order revoking probation. See *State v. Roberts*, 304 Neb. 395, 934 N.W.2d 845 (2019) (party wishing to challenge some aspect of his or her underlying conviction must do so in timely appeal of conviction).

### (c) Presumption of Probation

Spencer argues that the district court abused its discretion "in overcoming the presumption of probation." Brief for appellant at 26. Citing to Neb. Rev. Stat. § 29-2204.02(2) (Reissue 2016), he states, "Class IV felonies require a sentence of probation unless 'there are substantial and compelling reasons why the defendant cannot be effectively and safely be supervised in the community,' commonly understood to be the presumption of probation." Brief for appellant at 26. He argues that the "method of analysis employed by the trial court clearly does not overcome the presumption of probation" and the court failed to "make actual findings of 'substantial and compelling reasons,' and therefore inappropriately overcame the presumption of probation." *Id*. at 27.

Section 29-2204.02(2) only provides a presumption of probation for a conviction of a Class IV felony. Spencer was convicted of a Class IIIA felony. However, pursuant to § 29-2204.02(3), sentences for Class III, IIIA, and IV felonies do require that "[i]f a sentence of probation is not imposed, the court shall state its reasoning on the record." A court may fulfill this statutory requirement to state its reasoning on the record "by a combination of the sentencing hearing and sentencing order." *State v. Baxter*, 295 Neb. 496, 507, 888 N.W.2d 726, 735 (2017). As indicated above, the district court stated its reasoning at the sentencing hearing, as well as listed numerous reasons in the sentencing order as to why it found Spencer could not "effectively and safely be supervised in the community on probation."

### (d) Consideration of Sentencing Factors

Spencer also argues that, although the district court indicated it had considered the relevant sentencing factors, it focused its discussion at sentencing on "its perception of the crime and . . . Spencer's criminal history." Brief for appellant at 19. He argues the court only considered those two factors and failed to adequately consider Spencer's mentality, education level, and social and cultural background. Spencer specifically points out that he was "substantially compliant with the terms of probation" but "had vehicle trouble and barriers to accessing telecommunication." *Id*. at 22-23. He also argues that his "low level of education and learning disability were not given practical consideration and reflect a need for community-based supervision through probation." *Id*. at 23. He contends that the court did not consider "his ability to comprehend the legal process or what impact it may have had on his violation of probation." *Id*. at 24. Spencer argues that the PSR "reflects a man with little education and no supports and no social standing, a significant experience with trauma and loss, articulated psychological and cognitive deficits which are caused by or exacerbated by his mental health diagnoses, abuse, and head trauma." *Id*.

Upon our review of the relevant sentencing factors in this case, it is evident that the district court appropriately considered the seriousness of Spencer's offense and his individual

circumstances. Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. See *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). To the extent Spencer argues that the court did not adequately consider certain mitigating factors, it is evident the court had before it all the information Spencer suggests should have resulted in a lesser sentence. To the extent he claims the court gave too much consideration to certain sentencing factors and not others, we note that it was within the sentencing court's discretion to weigh more heavily the factors supporting a lengthier sentence, such as the seriousness of the offense, the lasting effects on the victim, Spencer's high risk to recidivate, and Spencer's history of assault-related convictions.

(e) Cruel and Unusual Punishment

Spencer further argues that his sentence was "grossly disproportionate compared to the crime" and thus his sentence violated his Eighth Amendment right to be free of cruel and unusual punishment. Brief for appellant at 27. He "acknowledges his sentence is within statutory guidelines," but argues that this "is not a *carte blanche* license for any trial court to impose a sentence grossly exceeding the crime." *Id.*

The Eighth Amendment prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed. *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017). The U.S. Supreme Court has characterized this as a "narrow proportionality principle" which does not require strict proportionality between crime and sentence, but, rather, forbids only extreme sentences that are grossly disproportionate to the crime. *Id*. See *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003) (citing *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)). See, also, *Lockyer v. Andrade*, 538 U.S. 63, 77, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) ("[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case").

As we previously noted, Spencer's sentence was within the statutory limits for a Class IIIA felony. See § 28-105 (maximum 3 years' imprisonment and 18 months' post-release supervision for Class IIIA felony). An Eighth Amendment analysis generally respects legislative determinations of statutory sentencing limits. See *State v. Loschen*, 221 Neb. 315, 376 N.W.2d 792 (1985) (sentence of imprisonment within limits of valid statute ordinarily not cruel and unusual punishment in constitutional sense). Considering that third degree domestic assault is a serious crime and that Spencer had prior convictions for domestic assault, the sentence imposed on Spencer was not grossly disproportionate to the crime in violation of the Eighth Amendment. We therefore conclude that Spencer's sentence does not violate his Eighth Amendment right to be free from cruel and unusual punishment.

(f) Summary

Spencer was sentenced within the statutory range for a Class IIIA felony. Notably, he received the benefit of probation when he was initially sentenced for this offense, but he failed to comply with the terms of his probation. Only then did the district court impose a term of imprisonment. We cannot say the court abused its discretion in determining the sentence imposed.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Blaha, supra.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*.

In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Theisen, supra*. When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.* In *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), the Nebraska Supreme Court stated, "We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity."

Spencer's appellate counsel is different from his trial counsel. He assigns as error that "trial counsel failed to pursue credible avenues of defense, both in preparation for trial and at sentencing." Brief for appellant at 11.

### (a) Preparation for Trial

Spencer argues that while trial counsel "exerted efforts to negotiate and plea bargain," counsel failed to prepare "other reasonable defenses." *Id*. at 28. However, Spencer fails to argue this claim with sufficient particularity for this court to determine whether this claim can be decided on the record before us. See *State v. Theisen, supra*. He does not specify what defenses trial counsel

could have pursued. He generally asserts that he had "evidence that would have cast serious doubt on the State's witnesses should his initial case and charges have gone to trial," but that trial counsel failed to "use the subpoena power of the District Court to obtain this evidence." Brief for appellant at 29. However, Spencer does not even generally identify what that evidence would have been. As such, we find Spencer failed to allege this portion of his ineffective assistance of counsel claim with sufficient particularity to preserve it.

### (b) Sentencing

Spencer also argues that trial counsel "made arguments at the sentencing hearings but did not address the reasons for the Office of Probation's recommendations in the Presentence Report and its addendum . . . specifically, trial counsel should have argued that . . . Spencer was gainfully employed and the circumstances for his non-compliance were beyond his control." *Id.* at 29. We fail to see how this alleged deficiency could have prejudiced Spencer. The district court had received and reviewed the PSR and its August 19, 2023, update, and those documents contained information related to Spencer's employment, among many other matters as previously addressed. Further, trial counsel asked the court to "order a sentence of time served." Trial counsel informed the court that Spencer wanted to continue working and that he "more or less apologized for probation and his failure to provide some verifications." Counsel pointed out that Spencer "was in classes" and "was doing at least some community service" and that it was not alleged that he was using controlled substances. Counsel contended it was not a matter of "not complying at all," but just not "fully complying." Trial counsel's arguments at sentencing were within the range of competence demanded of attorneys in criminal cases. As such, we find that this portion of Spencer's claim of ineffective assistance of counsel also fails.

### VI. CONCLUSION

For the reasons set forth above, we affirm Spencer's sentence. We further find that Spencer's claims of ineffective assistance of counsel fail.

AFFIRMED.