Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/09/2018 08:15 AM CST

State of Nebraska, appellee, v.
Nico M. Wofford, appellant.
___ N.W.2d ___

Filed December 15, 2017.    No. S-16-1004.

1. **Trial: Joinder: Appeal and Error.** A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion.

2. **Juries: Discrimination: Prosecuting Attorneys: Appeal and Error.** An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law. It reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory.

3. **Trial: Juries: Evidence: Appeal and Error.** A trial court's decision to allow a jury during deliberations to rehear or review nontestimonial evidence is reviewed by an appellate court for an abuse of discretion.

4. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

6. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly

depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

7. **Trial: Joinder: Indictments and Informations.** The propriety of a joint trial involves two questions: whether the consolidation is proper because the defendants could have been joined in the same indictment or information, and whether there was a right to severance because the defendants or the State would be prejudiced by an otherwise proper consolidation of the prosecutions for trial.

8. **Trial: Joinder: Proof: Appeal and Error.** The burden is on the party challenging a joint trial to demonstrate how and in what manner he or she was prejudiced.

9. **Trial: Joinder.** Consolidation is proper if the offenses are part of a factually related transaction or series of events in which both of the defendants participated.

10. **Trial: Joinder: Evidence.** A defendant is not considered prejudiced by a joinder where the evidence relating to both defendants would be admissible in a trial of either defendant separately.

11. **Juries: Prosecuting Attorneys: Equal Protection.** A prosecutor is ordinarily entitled to exercise permitted peremptory challenges for any reason at all, if that reason is related to his or her view concerning the outcome of the case. However, the U.S. Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), held that the Equal Protection Clause forbids the prosecutor to challenge jurors solely because of their race.

12. **Juries: Discrimination: Prosecuting Attorneys: Proof.** Determining whether a prosecutor impermissibly struck a prospective juror based on race is a three-step process. In this three-step process, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. First, a defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge because of race. Second, assuming the defendant made such a showing, the prosecutor must offer a race-neutral basis for striking the juror. And third, the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination.

13. **Juries: Discrimination: Prosecuting Attorneys.** Whether a prosecutor's reasons for using a peremptory challenge are race neutral is a question of law.

14. ____: ____: ____. In determining whether a prosecutor's explanation for using a peremptory challenge is race neutral, a court is not required to reject the explanation because it is not persuasive, or even plausible; it is sufficient if the reason is not inherently discriminatory. Only inherently discriminatory explanations are facially invalid.

15. **Appeal and Error.** An appellate court does not consider errors which are argued but not assigned.
16. **Trial: Juries: Evidence.** A trial court does not have discretion to submit testimonial materials to the jury for unsupervised review, but the trial court has broad discretion to submit to the jury nontestimonial exhibits, in particular, those constituting substantive evidence of the defendant's guilt.
17. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.
18. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.
19. **Sentences: Judgments.** The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Ernest H. Addison, Jr., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Nico M. Wofford appeals his convictions and sentences in the district court for Douglas County for unlawful discharge of a firearm and use of a weapon to commit a felony. Wofford assigns error to certain rulings and actions of the trial court, and he claims that there was insufficient evidence for his

convictions and that the court imposed excessive sentences. We affirm Wofford's convictions and sentences.

## STATEMENT OF FACTS

On July 30, 2015, police officers responded to reports of a shooting in the area of South 33d and Q Streets in Omaha, Nebraska. Police found a dark blue Oldsmobile parked near a convenience store on Q Street. Shots had been fired into the Oldsmobile from another vehicle that was passing it in an adjacent lane. Four adults and two children had been inside the Oldsmobile at the time, and one of the adult occupants was injured by a gunshot to the neck. Police found another vehicle, a silver Saturn, stopped a short distance away on South 33d Avenue; it appeared that the Saturn had been disabled after it struck the curb of a storm drain after turning onto South 33d Avenue from Q Street. Witnesses stated that three men had run from the Saturn after it stopped.

The registered owner of the Saturn was Lafferrell Matthews. Officers investigating the shooting found Matthews in the area near South 33d and S Streets. When the officers approached Matthews, he told them he had been looking for police in order to report that his car had been stolen. In later questioning by police, Matthews initially repeated that his car had been stolen, but he eventually admitted that he was driving the Saturn at the time the shooting occurred. Matthews further told police that Wofford and another man, Dominique Hairston, were passengers in the Saturn.

Wofford and Hairston were each charged in the district court with unlawful discharge of a firearm and use of a weapon to commit a felony. The State moved the court to consolidate the two cases for trial pursuant to Neb. Rev. Stat. § 29-2002 (Reissue 2016). Wofford objected to the consolidation. He argued, inter alia, that consolidation would prejudice him because there was a real probability that the jury could find him guilty by association with Hairston and because there was a risk of inconsistent defenses between the two codefendants.

Hairston did not object to consolidation. The court rejected Wofford's arguments and sustained the State's motion to consolidate the two cases for trial.

During jury selection for the consolidated trial, Wofford raised a challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Wofford noted that both he and Hairston were African-American. He further noted that only 1 out of the 62 potential jurors included in the venire was African-American and that the State used a peremptory strike on the sole African-American. Hairston joined Wofford's *Batson* challenge. The prosecutor responded to the challenge by stating that his reason for striking the potential juror was because "numerous times during questioning, he explained that he had religious beliefs that, yes, he could vote with the group, but he would not be able to judge somebody on an individual basis." The prosecutor stated that he did not think the potential juror would be appropriate based on his "hesitancy to be able to make a judgment based on his religious beliefs on an individual basis."

In connection with the *Batson* discussion, the prosecutor appeared to be referring to the voir dire of the potential juror wherein the prosecutor asked, "[W]hen you go back to the jury room, you're going to vote, and you're going to vote guilty or innocent. Do your religious beliefs prevent you from doing that as an individual?" The potential juror responded, "Yes, it does." The prosecutor followed up by asking, "You wouldn't be able to set aside your religious beliefs and give . . . Wofford and . . . Hairston a fair trial?," to which the potential juror responded "No." At that point in the voir dire, the State challenged the potential juror for cause. The court questioned the potential juror further and asked whether the potential juror would be comfortable judging others as part of a group, even in light of his religious beliefs. The potential juror responded to the court, "As a group I can, yeah." The court asked further questions regarding whether the potential juror meant that he would simply go along with the group's decision or whether

he would make his own decision. The juror replied, "Based on the evidence, if I disagree, yes, I will stand . . . my ground." Thereafter, the State appeared to abandon its challenge for cause but used one of its peremptory challenges to strike the potential juror.

In the *Batson* challenge, after the State gave its reasons for striking the potential juror, the court ruled that the State's reasons for removal were acceptable. Wofford and Hairston then argued that the State's reasons were pretextual because the potential juror's statements "arose more from a language problem than anything else" and that the potential juror did not appear to fully understand the prosecutor's questions. They noted that when the potential juror was asked "more pointed, direct questions, can you be fair and impartial, will you make up your own mind and not be swayed by the group, he said yes to all that." The court then found that the reasons given by the State were "neutral and not racial based," and it therefore denied Wofford and Hairston's *Batson* challenge.

Matthews, who was charged with the same offenses as Wofford and Hairston but whose case was not consolidated with their trial, testified at Wofford and Hairston's consolidated trial. Matthews testified that on July 30, 2015, he was driving his Saturn and Wofford and Hairston were passengers, Wofford riding in the back seat on the passenger side and Hairston in the front passenger seat. Matthews first noticed the Oldsmobile in front of his Saturn when he was stopped at a light at the intersection of 30th and Q Streets. Matthews testified that Hairston said that he recognized the Oldsmobile. After going through the intersection of 30th and Q Streets, Matthews moved into the left lane to pass the Oldsmobile, which was in the right lane. As he was passing the Oldsmobile, Matthews heard three shots coming from the back seat of his Saturn, where Wofford was located. Matthew testified that he then saw Hairston pull out a handgun, lean out the window, and fire six or seven shots.

The State presented other evidence including, inter alia, testimony by various police officers who had investigated the shooting. Testimony by officers indicated that, based on shell casings found at the scene of the shooting, the shots fired at the Oldsmobile had been fired from two different guns. During the testimony of one of the officers, the State offered into evidence a surveillance camera video that was taken from a restaurant located near the site of the shooting and which depicted the Saturn passing the Oldsmobile as the shooting occurred. The video was received into evidence without objection, and the video was played for the jury while the State questioned the officer regarding what was being depicted in the video.

After the State rested its case, Wofford and Hairston moved the court to dismiss on the basis that the State had not shown a prima facie case. The court overruled the motion to dismiss.

Wofford chose not to testify in his own defense. Hairston testified in his own defense and generally testified that while he had ridden with Matthews in Matthews' car on July 30, 2015, he did not ride in Matthews' car at a time when Wofford was a passenger, and that he did not fire any shots out of Matthews' car. Hairston did not testify that Wofford had been in Matthews' car at any time on July 30, and he did not testify that Wofford had fired any shots from Matthews' car.

The case was submitted to the jury. During deliberations, the jury sent a request asking for a "t.v. for video please." The court agreed to the request; however, a laptop computer rather than a television was sent to the jury to be used for viewing the surveillance video.

The jury rendered verdicts finding Wofford guilty on both counts. Sometime after the jury was dismissed, Wofford's counsel was approached by one of the jurors, who told him that during deliberations, the jury had viewed a "mirror-image" of the surveillance video that had been played in court. Wofford's counsel later spoke with the jury foreperson, who said that he

and another juror had used a feature on the laptop computer that had been provided to the jury to play a reverse or mirror image of the surveillance video. The foreperson further said that after viewing the mirror image, they had called over other jurors to view the mirror image. The foreperson and another juror told counsel that when they viewed the mirror image, they could see an arm coming out of the back seat window of the vehicle and a front-seat passenger in a white shirt, and that they had not noticed these things when they had viewed the video in the original manner.

Wofford filed a motion for a new trial in which he alleged two bases for a new trial: First, Wofford alleged that there was an irregularity in the proceedings because during the jury's deliberation, the court provided it with a laptop computer which allowed jurors to view a mirror image of the surveillance. Second, Wofford alleged that that there was jury misconduct because the jury viewed a mirror image of the surveillance video; he argued that the mirror image was extraneous prejudicial information that was not presented in court. The court overruled Wofford's motion for a new trial and his request for an evidentiary hearing on the motion.

The court thereafter sentenced Wofford to imprisonment for 20 to 30 years for unlawful discharge of a firearm and to an additional term of imprisonment for 20 to 30 years for use of a weapon to commit a felony. The court ordered the two sentences to be run consecutively to each other.

Wofford appeals his convictions and sentences.

## ASSIGNMENTS OF ERROR

Wofford claims that the district court erred when it (1) sustained the State's motion to consolidate his trial with Hairston's; (2) overruled his challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), to the jury selection process; and (3) allowed the jury unsupervised and unfettered access to view the surveillance video during deliberations. Wofford further claims that there was insufficient

evidence to support his convictions and that the court imposed excessive sentences.

## STANDARDS OF REVIEW

[1] A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

[2] An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law. It reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory. *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017).

[3] A trial court's decision to allow a jury during deliberations to rehear or review nontestimonial evidence is reviewed by an appellate court for an abuse of discretion. See *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014).

[4] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017).

[5,6] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly

depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## ANALYSIS

*District Court Did Not Abuse Its Discretion When It Sustained Motion to Consolidate Wofford's and Hairston's Cases for Trial.*

Wofford claims that the district court erred when it sustained the State's motion to consolidate his trial with that of Hairston. We conclude that the court did not abuse its discretion.

[7,8] We note first that there is no constitutional right to a separate trial and that instead, the right is statutory and depends upon a showing that prejudice will result from a joint trial. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015). See § 29-2002. The propriety of a joint trial involves two questions: whether the consolidation is proper because the defendants could have been joined in the same indictment or information, and whether there was a right to severance because the defendants or the State would be prejudiced by an otherwise proper consolidation of the prosecutions for trial. *State v. Stricklin, supra*. The burden is on the party challenging a joint trial to demonstrate how and in what manner he or she was prejudiced. *Id*.

[9] We have stated that consolidation is proper if the offenses are part of a factually related transaction or series of events in which both of the defendants participated. *Id*. Wofford does not appear to dispute that the charges he and Hairston faced were part of a factually related transaction or series of events. Further, we note that Wofford and Hairston were charged with the same offenses and that the charges against each of them arose from their alleged involvement in the July 30, 2015, shooting.

Instead, Wofford argues that the district court's consolidation of the two cases was an abuse of discretion because it prejudiced him and deprived him of a fair trial. Wofford asserts that he was prejudiced by the consolidated trial because the

jury may have been misled by evidence implicating Hairston and may have found culpability on Wofford's part based on guilt by association with Hairston. Wofford also contends that he was prejudiced because of the testimony of Matthews, a codefendant whose trial was not consolidated with that of Wofford and Hairston. Wofford further argues that he was prejudiced because while he chose not to testify in his defense, Hairston did testify in his own defense, and because he admitted certain things, such as an association with Matthews, which the jury might have used as evidence against Wofford.

We disagree with Wofford's assertion that consolidation unfairly prejudiced him. Regarding Wofford's argument that he was prejudiced as a result of guilt by association with Hairston, we agree with the State's contention that guilt by association is a risk present any time codefendants' trials are consolidated and that such risk may be adequately ameliorated by proper jury instruction. In this case, the district court instructed the jury that it "must come to a separate decision regarding each Defendant." Also, the risk of guilt by association in this case appeared small. This does not appear to be a case where the evidence against Hairston was much stronger than that against Wofford. Instead, the same evidence, in particular Matthews' testimony, seemed to implicate both equally. Also, contrary to Wofford's contention that he and Hairston each relied on a defense of exonerating himself by implicating the other, we note that when Hairston testified in his own defense, he generally denied being involved in the shooting. But Hairston did not implicate Wofford, and instead, he testified that he did not know whether or not Wofford was involved.

Having reviewed the record, we believe that there is no indication that any of the evidence admitted in this consolidated case, including the testimony of Matthews and the testimony of Hairston, would not have been admissible against Wofford in a separate trial. To the extent Wofford argues that certain testimony by Matthews should not have been admitted or that

certain evidence Wofford offered regarding Matthews should have been admitted, it is an argument focused on the evidence ruling and it does not appear that the admission or refusal of such evidence was influenced by the fact that Wofford's trial was consolidated with that of Hairston. Wofford does not separately assign error to the admission or refusal of such evidence, and therefore, we consider the argument only to the extent it impacts the correctness of the court's decision to consolidate the trials.

[10] Because it appears that the rulings regarding the admissibility of the evidence noted by Wofford would have been the same in a separate trial, Wofford has failed to show that the consolidation of his trial with that of Hairston caused him prejudice. A defendant is not considered prejudiced by a joinder where the evidence relating to both defendants would be admissible in a trial of either defendant separately. See *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

We determine that the consolidation of Wofford's trial with that of Hairston was proper and that Wofford was not prejudiced by the consolidation. The district court therefore did not abuse its discretion when it sustained the State's motion to consolidate the trials, and we reject Wofford's first assignment of error.

*District Court Did Not Err When It Overruled Wofford's* Batson *Challenge to the Jury Selection Process.*

Wofford claims that the district court erred when it overruled his challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), to the jury selection process. We conclude that the court did not so err.

We note first that Wofford appears to argue that he challenged both the composition of the venire and the prosecutor's strike of the sole African-American potential juror. However, other than noting that "only one out of 62 [potential] jurors was black," the record does not show that Wofford developed

an attempt to challenge the composition of the venire. That is, Wofford did not attempt to make a showing that the underrepresentation of racial minorities was "'due to systematic exclusion of the group in the jury-selection process'" as would be required for such a challenge. See *State v. Thomas*, 262 Neb. 985, 1002, 637 N.W.2d 632, 652 (2002). Instead, Wofford's challenge at the district court focused on the State's use of a peremptory strike to remove the sole African-American potential juror, and on appeal, we focus on that challenge.

[11] A prosecutor is ordinarily entitled to exercise permitted peremptory challenges for any reason at all, if that reason is related to his or her view concerning the outcome of the case. *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017). However, the U.S. Supreme Court in *Batson v. Kentucky, supra*, held that the Equal Protection Clause forbids the prosecutor from challenging jurors solely because of their race.

[12] Determining whether a prosecutor impermissibly struck a prospective juror based on race is a three-step process. *State v. Clifton, supra*. In this three-step process, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *Id*. First, a defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge because of race. Second, assuming the defendant made such a showing, the prosecutor must offer a race-neutral basis for striking the juror. And third, the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination. *Id*.

[13] Once the trial court has decided the ultimate question of intentional discrimination, however, the question on appeal is only whether the prosecutor's reasons were facially race neutral and whether the trial court's final determination regarding purposeful discrimination was clearly erroneous. *Id*. Whether a prosecutor's reasons for using a peremptory challenge are race neutral is a question of law. *Id*.

[14] We conclude that in this case, the prosecutor's stated reason for exercising his peremptory strike was race neutral. The prosecutor generally stated that he struck the prospective juror because he was concerned by the prospective juror's statements to the effect that because of his religious beliefs, he did not think that he could judge another person. In determining whether a prosecutor's explanation for using a peremptory challenge is race neutral, a court is not required to reject the explanation because it is not persuasive, or even plausible; it is sufficient if the reason is not inherently discriminatory. *Id*. Only inherently discriminatory explanations are facially invalid. *Id*. The prosecutor in this case gave a reason that did not indicate discrimination based on the prospective juror's race.

We next consider whether the district court's final determination regarding purposeful discrimination was clearly erroneous. The third step of the inquiry under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), requires the trial court to evaluate the persuasiveness of the justification proffered by the prosecutor; it ultimately determines whether the explanation was a pretext for discrimination. *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017). A trial court's determination that the prosecutor's race-neutral explanation should be believed frequently involves its evaluation of a prosecutor's credibility, which requires deference to the court's findings absent exceptional circumstances. *Id*.

The question before us is whether the district court clearly erred in finding that the prosecutor's race-neutral explanation for the peremptory strike was genuine and not pretextual, and we may consider the rationality of the prosecutor's reason in our inquiry. *Id*. A prosecutor's intuitive assumptions, inarticulable factors, or even hunches can be proper bases for rejecting a potential juror, so long as the reasons are not based on impermissible group bias. *Id*.

We believe that the prosecutor's stated reason for striking the juror appears to be a valid reason that was not a pretext for racial discrimination. The prosecutor was concerned whether

the potential juror's stated beliefs would prevent him from participating in deliberations because of his reluctance to judge Wofford. The potential juror had made statements to this effect, and although the potential juror also made other statements indicating that he could make such a judgment as part of a group and that he could render a fair decision, the potential juror's initial statements could have given the prosecutor valid cause for concern.

Based on our review of the record, we determine the district court did not clearly err when it found that the prosecutor's race-neutral explanation for striking the sole African-American prospective juror was valid and that the use of the peremptory challenge was not purposefully discriminatory. We therefore reject Wofford's claim that the district court erred when it denied his *Batson* challenge.

*District Court Did Not Abuse Its Discretion When It Allowed the Jury Access to Surveillance Video During Deliberations.*

For his next assignment of error, Wofford claims that the district court erred when it allowed the jury unsupervised and unfettered access to view the surveillance video during deliberations. We determine that the district court did not err.

[15] As a preliminary matter, we note that in his brief, Wofford argues that the court erred when it overruled his motion for a new trial based on (1) alleged irregularities in the proceedings because the jury was provided a laptop computer to view the surveillance video and (2) alleged jury misconduct because the jury used the laptop computer to view a reversed image of the surveillance video. This claim differs from his assignment of error. An appellate court does not consider errors which are argued but not assigned. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017). We therefore do not consider Wofford's arguments related to the overruling of the motion for a new trial in this appeal, and instead, we limit our consideration to the error assigned. However, we note

that in his appeal, Wofford's codefendant, Hairston, raised the court's overruling of the motion for a new trial related to the jury's consideration of the video and that we concluded that the district court did not abuse its discretion when it overruled Hairston's motion for a new trial based on alleged jury misconduct. *State v. Hairston, ante* p. 251, ___ N.W.2d ___ (2017). We turn to consideration of the error assigned by Wofford.

[16] A trial court does not have discretion to submit testimonial materials to the jury for unsupervised review, but the trial court has broad discretion to submit to the jury nontestimonial exhibits, in particular, those constituting substantive evidence of the defendant's guilt. See *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016). The surveillance video in this case was not testimony but was instead a nontestimonial exhibit that constituted substantive evidence of Wofford's guilt. Whether or not Wofford could be identified in the video, the video depicted the shooting for which he was charged, and the video corroborated other evidence. Because the DVD's containing the surveillance video were nontestimonial exhibits that contained substantive evidence of Wofford's guilt, the district court had broad discretion to submit the DVD's to the jury for use during deliberations. We find no abuse of discretion.

To the extent Wofford argues that it was improper to allow the jury to use the laptop computer to view the video, it is clear that some sort of device was necessary to allow the jury to view the DVD's, and there is no indication in the record that Wofford objected to the particular device—the laptop computer—that was given to the jury at the time it was given. We conclude that the court did not abuse its discretion by doing so, and we reject this assignment of error.

*Evidence Was Sufficient to Support*
*Wofford's Convictions.*

Wofford claims that there was insufficient evidence to support his convictions. Because the evidence was sufficient, we reject this assignment of error.

We note that Wofford framed his assignment of error as a challenge to the sufficiency of the evidence, but in his argument, he asserts that the district court erred when it overruled his motion to dismiss at the close of the State's case. We have held that a defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling of the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016). Because Wofford framed his assignment of error as a challenge to the sufficiency of the evidence, we consider his arguments as such and we need not consider whether he waived his right to challenge the court's overruling of his motion to dismiss.

Wofford generally contends that the State's evidence was not sufficient to prove a prima facie case for the charges against him. He argues that the testimony of the State's witnesses was not corroborated by any physical evidence such as DNA testing or fingerprinting that would identify Wofford as the person who fired the shots. He further argues that none of the occupants of the vehicle into which the shots were fired identified him as the shooter, that no weapon was found in his possession, and that there was no gunpowder residue to connect him to the shooting. Wofford further contends that the testimony of his codefendants, Matthews and Hairston, was "so self serving and so extremely doubtful in character" that it lacked probative value to support his convictions. Brief for appellant at 19.

Physical and testimonial evidence in this case showed that shots had been fired from the Saturn into the Oldsmobile on July 30, 2015. Matthews testified that Wofford was sitting on the passenger side of the back seat of the Saturn that Matthews was driving, and Matthews heard shots being fired from the

back seat. Such testimonial evidence, if believed by the jury, was, in combination with the other evidence presented by the State, sufficient to show Wofford's guilt for the crimes charged. The absence of physical evidence, forensic or otherwise, identifying Wofford as the shooter does not necessarily negate a finding that he fired the shots. To the extent Wofford argues that Matthews' testimony was not credible, when reviewing a claim of sufficiency of the evidence, we do not pass on the credibility of witnesses, because such matters are for the finder of fact. See *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The jury as fact finder in this case had the duty to assess Matthews' credibility, and the jury was able to consider the extent to which Matthews' self-interest or other factors affected his credibility.

The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. The jury in this case could reasonably have found Matthews' testimony credible and, viewing his testimony in connection with the other evidence in this case, found Wofford guilty of the crimes charged.

We conclude that the evidence was sufficient to support Wofford's convictions. We reject this assignment of error.

*District Court Did Not Impose*
*Excessive Sentences.*

Wofford claims that the court imposed excessive sentences. We conclude that the court did not abuse its discretion when it sentenced Wofford.

Wofford was convicted of unlawful discharge of a firearm at an occupied motor vehicle, which is a Class ID felony under Neb. Rev. Stat. § 28-1212.02 (Reissue 2016). The sentencing range for a Class ID felony is imprisonment for a mandatory minimum of 3 years and maximum of 50 years. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2014). He was also convicted of use

of a firearm to commit a felony, which is a Class IC felony under Neb. Rev. Stat. § 28-1205(1)(a) and (c) (Reissue 2016). The sentencing range for a Class IC felony is imprisonment for a mandatory minimum of 5 years and maximum of 50 years. § 28-105(1). The district court sentenced Wofford to imprisonment for 20 to 30 years for unlawful discharge of a firearm and to a consecutive term of imprisonment for 20 to 30 years for use of a weapon to commit a felony. The sentences were within the statutory ranges, and we therefore review the sentences for an abuse of discretion by the district court. See *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017).

[17-19] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stone, ante* p. 53, 902 N.W.2d 197 (2017). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *State v. Jackson*, 297 Neb. 22, 899 N.W.2d 215 (2017).

Wofford contends that the district court did not adequately consider all these factors when it imposed his sentences. He asserts in particular that the court did not give adequate weight to the fact that he had no prior felony convictions or convictions for assaultive or violent behavior; that he had a long, stable, and consistent employment history; that he had no bond violations after bonding out of jail and had not

lost any good time while he was incarcerated prior to bonding out; and that he had strong family ties, including two minor children.

The record of the sentencing hearing indicates that these factors were presented to the court, and the court acknowledged Wofford's arguments. The court indicated that when it determined Wofford's sentences, it also considered the seriousness of the crime and testing that showed that Wofford was at a very high risk to reoffend.

The sentences imposed by the district court were in the middle of the statutory ranges for the offenses. Nothing in the record indicates that the court failed to consider the mitigating factors advanced by Wofford or that it did not give adequate weight to such factors when considered in light of the factors cited by the court to justify the sentences. We find no abuse of discretion in the sentencing, and we therefore reject Wofford's claim of excessive sentences.

## CONCLUSION

Having rejected Wofford's assignments of error, we affirm Wofford's convictions and sentences.

AFFIRMED.

WRIGHT, J., not participating in the decision.