IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LEWIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROBERT S. LEWIS, APPELLANT.

Filed March 27, 2018.    Nos. A-17-583, A-17-584.

Appeals from the District Court for Platte County: ROBERT R. STEINKE, Judge. Affirmed.

Timothy P. Matas, Platte County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

RIEDMANN and BISHOP, Judges, and INBODY, Judge, Retired.

BISHOP, Judge.

## INTRODUCTION

Robert S. Lewis was convicted by a jury in two separate cases of operating a motor vehicle during license revocation in the district court for Platte County. Lewis was sentenced to 2 years' imprisonment and 9 months' postrelease supervision in each case, with the two sentences to be served concurrently. Lewis appeals, claiming that the court erred by not giving a jury instruction on entrapment by estoppel and by imposing excessive sentences. We affirm.

## BACKGROUND

Lewis was pulled over in Columbus, Nebraska, on August 25, 2016, because he was driving a pickup with a trailer that did not have any license plates or in-transit details. Lewis had only an expired paper copy of a Nebraska operator's license at the time of the stop, and claimed he had not yet received the hard copy from the Nebraska Department of Motor Vehicles (DMV). The officer conducting the stop believed Lewis' license had previously been revoked as the result

- 1 -

of a conviction for driving under the influence (DUI). However, Lewis was allowed to leave, despite the paper copy being expired, after police dispatch confirmed the license number was still valid. After the stop, the officer investigated further based on his suspicion that Lewis' license had been revoked. He discovered the DMV had already initiated its own investigation into Lewis' license, and learned that Lewis had been issued a second license using a different social security number and date of birth than was associated with his first license, which had been revoked as a result of a conviction for DUI, fifth offense. On December 2, after driving away from his residence, Lewis was arrested pursuant to a warrant issued as a result of Lewis driving with a revoked license on August 25.

Lewis was charged in two separate cases, CR 16-197 (now appellate case No. A-17-583) for the driving incident on December 2, 2016, and CR 16-198 (now appellate case No. A-17-584) for the driving incident on August 25. Both cases were joined for trial. In each case, Lewis was charged with a single count of operating a motor vehicle during a 15-year revocation. The information in CR 16-198 also contained a charge for obtaining an operator's license by fraud, but as noted below, it appears that charge was no longer at issue at the time of trial.

A jury trial commenced on April 3, 2017. At the outset of the trial, the jury was only informed of the two charges against Lewis for operating a motor vehicle during revocation, and the jury only returned a verdict on those two charges. Our record contains the original information for CR 16-198, and nothing in the record explains the disposition of the charge against Lewis for obtaining an operator's license by fraud in that case. Nevertheless, only the two charges for operating a motor vehicle during revocation were at issue at trial, and they are the only convictions and sentences relevant to this appeal. We now summarize the evidence relevant to the errors assigned by Lewis.

Marlene Vetick, the clerk of the district court for Platte County, testified as follows. Exhibit 2 is the transcript from Platte County District Court case No. CR 10-140, in which Lewis was convicted of "DWI-Fifth Offense" and sentenced on January 12, 2011. Part of that sentence was a 15-year driver's license revocation, beginning on January 12. Vetick testified that the records regarding the revocation were provided via an electronic information system to several agencies across Nebraska, including the DMV. Officer Troy Urkoski, a police officer for the City of Columbus, testified he worked on that case (CR 10-140), and he identified Lewis as the individual convicted in that case.

Officer Dale Ciboron, a police officer for the City of Columbus, testified he was on duty on August 25, 2016. During his shift that day, he observed a pickup pulling a trailer that did not have any license plates or in-transit details. He conducted a traffic stop of that vehicle. Lewis, the driver of the pickup, gave Ciboron a vehicle registration and an expired paper copy of a Nebraska driver's license; the name on the license was "Robert Scott Lewis" and the birth date was in October 1962. The paper copy was the type drivers are given for a 30-day period until a hard copy of the license is sent by the DMV. The paper copy was issued on February 19, 2016, and expired on March 20. The license number began with the letter "H" (H license). Ciboron asked Lewis where the hard copy of his license was, and Lewis informed him that he had not yet received it from the DMV.

Ciboron testified he relayed the information from the paper license to the police dispatcher, who ran it through the "state files" and found the license was valid. Ciboron issued Lewis a

"correction card for [a] registration violation" and allowed Lewis to leave. Ciboron testified he did not issue Lewis a citation for not having a current license because dispatch had informed him the license was valid.

Ciboron stated that after the traffic stop, he conducted an investigation into the validity of the license Lewis had shown him. Ciboron was "trying to find a reason for why [the license] was valid," because he was aware of Lewis' past DUI conviction "which would have revoked his license for 15 years." Ciboron used the Nebraska Criminal Justice Information System (NCJIS) and found there were two entries for "Robert Lewis"; "[b]oth were black males, both living here in Columbus." The first license was for "Robert S. Lewis," also listed as "Bobby Lewis," with a birth date in October 1959, and an address on 25th Avenue in Columbus; that license number began with a "V" (V license) and was revoked for 15 years because of a DUI, 5th offense. The second license was for "Robert Scott Lewis," with a birth date in October 1962, and an address on 5th Street in Columbus; that was the H license that was listed as valid. Ciboron was also able to view the signatures and photographs from both licenses. He stated the signatures "looked similar, if not the same," and the pictures "could be the same person, just at different points in time in their [sic] life."

Ciboron testified that after conducting his investigation, he contacted Lisa Banks, a crime analyst supervisor on the DMV's "Fraud Unit." Banks informed him she was aware of the two licenses because the DMV's facial recognition system had "red-flagged" the picture on the second license as the same person in the first license. Banks informed him that the social security numbers (which do not appear directly on the license, but are part of the DMV's record for each license) and birth dates for the licenses did not match, and she was investigating to see if there was a fraud issue. Ciboron testified that when he did not hear back again from Banks regarding the conclusion of her investigation, he proceeded to seek an arrest warrant based on Lewis driving with a revoked license on August 25, 2016, when Ciboron conducted the traffic stop.

Santiago Velasquez, a police officer for the City of Columbus, testified he was on duty on December 2, 2016. He was conducting surveillance at Lewis' residence in Columbus because Lewis "had an active Platte County warrant for his arrest." Velasquez stated he surveilled Lewis' house for multiple hours and did not attempt to serve the warrant at the house because he was not sure if Lewis was home. Eventually Velasquez observed Lewis get into a vehicle and drive away from the residence. Velasquez began to follow him in order to conduct a traffic stop. However, before Velasquez could conduct a traffic stop, Lewis stopped his vehicle, got out, and approached Velasquez' vehicle "with his hands up in the air as if asking why [Velasquez] was following him." Lewis admitted he was driving, and gave Velasquez a paper copy of a "temporary Nebraska operator's license." Velasquez contacted police dispatch, verified Lewis had an active warrant for his arrest, and then placed Lewis under arrest. After being transported to the police station, Lewis told Velasquez about his prior contacts with law enforcement, including a DUI conviction, and that his prior convictions should not apply to him because "technically" he was convicted under a different date of birth.

Banks testified that her investigation into the two licenses began when the DMV's facial recognition system revealed that a photograph on a driver's license with the name of "Robert Lewis" was a possible match to four photographs for a different license. Based on the facial recognition system results, and her own comparison of the photographs from the two different

licenses, Banks concluded the two licenses were issued to the same person. Banks said that Lewis used a different birth date and a different social security number when he applied for the H license than he had used to obtain the V license. He did not provide any of the information connected to the V license (social security number and birth date) at the time he applied for the H license, nor did he inform the DMV that the V license had been revoked. The bottom of the application for a driver's license contains a statement instructing applicants to provide truthful and accurate information throughout the application, and to not withhold "material" information. She stated this would include a 15-year license revocation because the examiner would not be allowed to issue a valid license for someone whose license has a "court-ordered suspension."

Banks further testified that having two social security numbers and two birth dates would also be "important . . . to disclose." However, the application does not specifically ask if the applicant is subject to a license revocation, or has a different social security number or different birth date. The H license was issued to Lewis on February 19, 2016. Banks stated the H license would never have been issued had the DMV been aware it was for the same person on the V license, because the V license was revoked and people in Nebraska are only allowed to have one license. Banks testified the examiner who issued the H license was unaware of the revoked V license because driving records are assigned by name, date of birth, and social security number, and the H license had a different date of birth and social security number and would have appeared to be for a separate person. Further, the revocation follows the person, not the license.

Banks testified the DMV investigation took "a few months" and involved the "Social Security Administration." The H license was cancelled by the DMV after it determined it was issued to the same person on the V license. The V license was also cancelled. A letter was mailed to Lewis on November 16, 2016, informing him of the cancellations. That letter was not sent by certified mail, but it had not been returned back to the DMV prior to the date of Banks' testimony. Banks also testified that Lewis contacted her by telephone the Friday preceding trial, and stated that he knew his V license had been revoked for 15 years. But Lewis told her "it was revoked for the date of birth of 1959" (which is the birth date on the V license), and therefore Lewis did not believe "it should be revoked for the date of birth of 1962" (which is the birth date on the H license). He told her "there was a technicality through the state that his date of birth was not 1959. His date of birth was 1962. And so the revocation should not count towards his 1962 date of birth." Banks did not recall whether Lewis told her during that phone call whether he knew back in February 2016 that his license was revoked.

The jury found Lewis guilty of one count of operating a motor vehicle during 15-year revocation in each case. A sentencing hearing was held on May 23, 2017, and a "Sentence and Judgment" order was entered the same day. In each case, Lewis was sentenced to a determinate sentence of 2 years' imprisonment and 9 months' postrelease supervision following his release; the sentences were to be served concurrently. The court also ordered Lewis' operator's license revoked for a period of 15 years from the date of the sentencing hearing.

Lewis appeals from the judgments entered in both cases; the cases have been consolidated on appeal.

## ASSIGNMENTS OF ERROR

Lewis assigns, in each case, that the district court erred by (1) not giving his requested jury instruction on entrapment by estoppel, and (2) imposing an excessive sentence.

## STANDARD OF REVIEW

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

An appellate court reviews the denial of the defense of entrapment by estoppel de novo, because it is a question of law. *State v. Planck*, 289 Neb. 510, 856 N.W.2d 112 (2014).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Dyer*, 298 Neb. 82, 902 N.W.2d 687 (2017). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

A determination of whether there are substantial and compelling reasons under § 29-2204.02(2)(c) why a defendant cannot effectively and safely be supervised in the community is within the trial court's discretion, and a decision to withhold probation on such basis will not be reversed on appeal absent an abuse of discretion. *State v. Dyer, supra.*

## ANALYSIS

*Jury Instruction on Entrapment by Estoppel.*

Lewis assigns the district court erred by denying his "request for a jury instruction regarding entrapment by estoppel." However, his argument cites to *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001), a case which addresses the affirmative defense of entrapment rather than entrapment by estoppel. We also note that during the jury instruction conference, Lewis initially requested the Nebraska pattern jury instruction for entrapment. The court rejected the requested instruction on the basis that the evidence submitted during the trial did not warrant it. However, after a short recess was taken, the court stated, "I want to better explain the Court's ruling with respect to the defendant's request for an entrapment instruction and I'm sure that would be a request for an instruction of an entrapment by estoppel?" Lewis' counsel responded, "Yeah." Accordingly, given that confirmation by defense counsel with the district court, and given the error as assigned in Lewis' brief, we consider whether the district court erred by refusing to give a jury instruction on entrapment by estoppel.

We note that Lewis' requested jury instruction on entrapment by estoppel was not included in our appellate record. However, given Lewis' reference to the "Nebraska pattern jury instructions," we consider the Nebraska pattern jury instruction for entrapment by estoppel, NJI2d Crim. 7.8, which states:

> The state must prove beyond a reasonable doubt that the defendant was not entrapped by estoppel into committing the (here insert crime). Entrapment by estoppel means that:
> 
> (1) the defendant acted in good faith before taking any action; and

- 5 -

(2) an authorized government official, acting with actual or apparent authority and who had been made aware of all relevant historical facts, affirmatively told the defendant that (here describe the conduct of defendant that is criminal) was legal; and

(3) the defendant actually relied on the statements of the government official; and

(4) the defendant's reliance was reasonable.

See, also, *State v. Planck, supra* (noting recent recognition of entrapment by estoppel as available affirmative defense and listing its four elements). The nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense. *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013). When the defendant has produced sufficient evidence to raise the defense, the issue is then one which the State must disprove. *Id*. This is the appropriate burden of proof for the entrapment by estoppel defense. *Id*.

In the present matter, the district court described the elements of the defense of entrapment by estoppel as set forth above, and then stated:

Here, the evidence shows, and it is without dispute, that when [Lewis] applied for the second license on February 19, 2016, using a different social security number and date of birth, the DMV was not made aware of all the relevant historical facts, namely, that [Lewis'] operator's license and driving privileges had been revoked for a period of 15 years when he was sentenced for DUI, fifth offense, in this court on January 12, 2011.

Because the DMV was not made aware of all relevant historical facts and because [Lewis], based on this record, could not have reasonably relied or acted in good faith, the Court is of the view that an entrapment by estoppel instruction is not warranted.

We agree with the district court. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). A trial court need not instruct the jury on an issue where the facts do not justify such an instruction. *State v. Planck, supra*.

As the district court correctly decided, an instruction on entrapment by estoppel is not warranted by the evidence in this case. Lewis' V license was revoked in 2011, and Lewis knew it was revoked for a period of 15 years. Lewis nevertheless applied for and received a second operator's license (H license) in error because a government official was not aware his V license was revoked due to Lewis' use of a different social security number and birth date than what was associated with the V license. Lewis never disclosed in his application for the H license that his V license had been revoked. Nor did he disclose that he had a prior license issued under a different social security number and birth date. The issuance of the H license was not an affirmative statement by a government official that Lewis could now legally drive; rather, it was an error predicated upon Lewis' use of a new birth date and social security number without full disclosure of his other license, birth date, and social security number. Indeed, Banks testified the revocation of Lewis' V license would have prevented the issuance of the H license had the DMV been aware the V license was his, or if DMV had been aware of the change in Lewis' social security number and birth date.

Lewis does not argue on appeal that there was any other evidence of an affirmative statement by a government official that he could legally drive aside from being "given a license by the government." Brief for appellant at 7. However, the mere erroneous issuance of the H license as a result of the government official's lack of relevant historical facts does not equate with an affirmative statement by a government official for purposes of entrapment by estoppel. For example, in *State v. Planck,* 289 Neb. 510, 856 N.W.2d 112 (2014), the defendant's conviction for reckless driving resulted in a 60-day impoundment of her driver's license, after which her license was returned to her in the mail. However, the reckless driving conviction also resulted in the defendant accumulating 12 or more points in a 2-year period thereby warranting summary revocation of her license. The DMV sent a letter notifying the defendant that her license was revoked for 6 months, however, the defendant claimed she did not receive that letter and she thought her driving privileges had been reinstated when her license was returned to her. She subsequently was arrested and convicted for driving under revocation. At trial, the defendant was denied her request for an entrapment by estoppel jury instruction. The Nebraska Supreme Court held that the defendant was not entitled to the instruction because there was no evidence of an affirmative statement or affirmative conduct by a government official that the defendant could legally drive. The defendant's "assumption that she could legally drive based on the processing of paperwork and return of her license, in the absence of being specifically told, was not sufficient to warrant the giving of the instruction." *State v. Planck*, 289 Neb. at 522-23, 856 N.W.2d at 121.

Similarly here, we find Lewis failed to adduce any evidence of any affirmative statement by a government official telling him that he could legally drive upon the issuance of the H license. The mere issuance of the H license does not constitute such a statement. Lewis was issued the H license only because he failed to inform the DMV of his V license, and he supplied the DMV with a new social security number and birth date which was not associated with his V license. Without having that information, the DMV erroneously issued the H license. Furthermore, Lewis can hardly argue that he applied for the H license in good faith. After being transported to the police station in December 2016, Lewis told an officer about his prior contacts with law enforcement, including a DUI conviction, and asserted that his prior convictions should not apply to him because "technically" he was convicted under a different date of birth. Lewis was operating under the mistaken assumption that because he had obtained the H license with a new birth date, then apparently any convictions tied to his V license should not apply to his H license. And, like the erroneous assumption made by the defendant in *Planck* that she could drive simply because her license had been returned to her, Lewis' erroneous assumption that he could drive with the H license simply because it was issued by the DMV in association with a different birth date also fails to support an instruction for entrapment by estoppel. There is no evidence a government official affirmatively told Lewis he could obtain the H license and drive with it despite the 15-year revocation associated with the V license. The district court did not err in denying Lewis' request for a jury instruction on entrapment by estoppel.

*Excessive Sentences.*

Lewis assigns the district court abused its discretion by sentencing him to 2 years' imprisonment and 9 months' postrelease supervision in each case, instead of probation or a lesser term of incarceration. Lewis was convicted of two counts of operating a motor vehicle during

revocation period, which is a Class IV felony under Neb. Rev. Stat. § 60-6,197.06 (Cum. Supp. 2016). A Class IV felony is punishable by up to 2 years' imprisonment and 12 months' postrelease supervision, a $10,000 fine, or both; imprisonment is not required, but there is a minimum of 9 months' postrelease supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105 (Reissue 2016). An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017). Lewis' sentences are within the statutory limits.

However, Neb. Rev. Stat. § 29-2204.02 (Reissue 2016) requires a sentence of probation for a Class IV felony conviction, unless certain exceptions apply, and "generally tips the balance in sentencing for a Class IV felony toward probation." *State v. Baxter*, 295 Neb. 496, 506, 888 N.W.2d 726, 734 (2017). Section 29-2204.02 states in relevant part:

> (2) If the criminal offense is a Class IV felony, the court shall impose a sentence of probation unless:
>
> (a) The defendant is concurrently or consecutively sentenced to imprisonment for any felony other than another Class IV felony;
>
> (b) The defendant has been deemed a habitual criminal pursuant to section 29-2221; or
>
> (c) There are substantial and compelling reasons why the defendant cannot effectively and safely be supervised in the community, including, but not limited to, the criteria in subsections (2) and (3) of section 29-2260. Unless other reasons are found to be present, that the offender has not previously succeeded on probation is not, standing alone, a substantial and compelling reason.
>
> (3) If a sentence of probation is not imposed, the court shall state its reasoning on the record, advise the defendant of his or her right to appeal the sentence, and impose a sentence as provided in subsection (1) of this section.

Although probation is favored under the statute, the Legislature also provided for exceptions to this general rule. As relevant here, one of those exceptions is a finding by the court that substantial and compelling reasons exist as to why Lewis cannot effectively and safely be supervised in the community. As stated in § 29-2204.02(3) above, and as clarified by *State v. Baxter, supra*, when a court decides against probation for a Class IV felony conviction, it is required to state, on the record, its reasoning rather than just its reasons for its decision. "The court may fulfill the requirement of § 29-2204.02(3) to state its reasoning on the record by a combination of the sentencing hearing and sentencing order[.]" *State v. Baxter*, 295 Neb. at 507, 888 N.W.2d at 735. And the "court's determination of substantial and compelling reasons should be based on a review of the record, including the presentence investigation report and the record of the trial, and its determination must be supported by such record." *Id*. at 508, 888 N.W.2d at 735. Further, although the phrase in § 29-2204.02(2)(c) which specifies the court must find "'substantial and compelling reasons why the defendant cannot effectively and safely be supervised in the community,'" such phrase "focuses on the characteristics of the defendant." *State v. Dyer*, 298 Neb. 82, 89, 902 N.W.2d 687, 693 (2017). The statute also includes consideration of the criteria in subsections (2) and (3) of § 29-2260, which "includes traditional sentencing criteria[.]" *State v. Dyer*, 298 Neb. at 90, 902 N.W.2d at 693.

Neb. Rev. Stat. § 29-2260 (Reissue 2016) states in relevant part:

(2) Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

(3) The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of withholding sentence of imprisonment:

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime;

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

Accordingly, "the appropriate considerations under § 29-2204.02(2)(c), when deciding whether the defendant can effectively and safely be supervised in the community, include the traditional reasons that a court is to consider when deciding whether to impose a sentence of imprisonment or a sentence of probation." *State v. Dyer*, 298 Neb. at 90, 902 N.W.2d at 693.

In Lewis' May 2017 sentencing orders, the district court found that Lewis "is not a fit and proper person to be sentenced to a term of probation," and "there are substantial and compelling reasons why [Lewis] cannot effectively and safely be supervised in the community, and the Court states its reasoning on the record." At the sentencing hearing, the court initially noted it had reviewed Lewis' presentence investigation report, and observed that Lewis is a divorced father of two children and that he has a "GED education." The court further pointed out Lewis' "extensive

previous criminal history" which "consumes seven pages of the presentence investigation report." The court described Lewis being "in trouble and appearing before the criminal courts of this state and in Colorado for a span of some 36 years." (Using Lewis' birth date of October 1962, Lewis would have been 54 years old at the time of sentencing.) The court observed a prior conviction and sentence to prison for kidnapping and first degree sexual assault, as well as Lewis' conviction and sentence to a prison term in 2011 for driving under the influence of alcohol, fifth offense. Further, despite having his operator's license revoked, Lewis chose to continue to drive, including continuing to drive after he was initially stopped in August 2016. The court stated:

> I was the sentencing Judge in 2011 when your operator's license was revoked for 15 years. I looked you in the eye then, much as I am looking you in the eye right now today in these cases, but you continued to drive regardless of your revocation. And you take no responsibility for your behavior and instead try to blame others. You just told me that there are quite a few people at fault, but, again, Mr. Lewis, in 2011, I told you you can't drive and I revoked your license for 15 years and you drove.
>
> . . . You show no remorse for your behavior in these two cases. Instead you blame others. And, given this record, the Court is of the opinion that you are not a fit and proper person to be sentenced to probation in these cases. The Court finds there are substantial and compelling reasons why [Lewis] cannot effectively and safely be supervised in the community and those reasons are as follows. First, a sentence of probation would, given this record, depreciate the seriousness of the offenses for which [Lewis] stands convicted and would promote disrespect for the law.
>
> Given [Lewis'] extensive previous criminal history and complete lack of remorse and failure to take any responsibility for his behavior, the risk is substantial, if not inevitable, that during a period of probation the defendant would engage in additional criminal conduct. [Lewis] is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility. [Lewis'] lengthy criminal history spanning three decades demonstrates a lack of commitment and motivation to abide by societ[y's] laws.
>
> Given [Lewis'] character and attitude, lack of remorse and failure to take any responsibility for his crimes, it is the Court's view it would be extremely likely that [Lewis] would engage or commit additional crimes if sentenced to probation.
>
> . . . [I]t is extremely unlikely, in the Court's view, that [Lewis] would respond affirmatively to probationary treatment.

As the State notes, the court's stated reasons are explicitly set forth in § 29-2260(2) as criteria for a sentence of imprisonment instead of probation. Also, the court's statements at the sentencing hearing went beyond simply providing a list of reasons; rather, as set forth in detail above, the court discussed its reasoning on the record in satisfaction of § 29-2204.02(3).

A district court's determination of whether there are substantial and compelling reasons under § 29-2204.02(2)(c) why a defendant cannot effectively and safely be supervised in the community is within the trial court's discretion, and a decision to withhold probation on such basis will not be reversed on appeal absent an abuse of discretion. *State v. Dyer, supra.* And as the Nebraska Supreme Court has stated, "the statute does not specifically define the phrase 'substantial

and compelling,'" but "both terms have commonly understood meanings and it is within the court's discretion to determine that its reasons are weighty enough to be substantial and compelling." *State v. Baxter*, 295 Neb. 496, 508, 888 N.W.2d 726, 735 (2017). The record supports the district court's determination, and we conclude the district court did not abuse its discretion when it determined there were substantial and compelling reasons that probation would not be an effective and safe sentence.

We next address Lewis' argument that his sentence is excessive and that a lesser term of incarceration should have been imposed. When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

Lewis argues that when considering these factors, and in reviewing the presentence investigation report, "and all of the relevant circumstances of the case, there can be no defensible reason for a sentence that provided for the maximum punishment for both cases." Brief for appellant at 11. Lewis also argues that "the length of his sentence can only be seen as an obstacle to discourage any rehabilitative needs he may have." *Id*. at 12.

However, nothing in the record indicates that the district court failed to consider the mitigating factors advanced by Lewis or that it did not give adequate weight to such factors when considered in light of the factors cited by the court to justify the sentences, as detailed earlier. We find no abuse of discretion by the district court in its sentencing in both cases.

CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court in both cases.

AFFIRMED.